**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA,

v.  1:15-cr-28-WSD-LTW-2

PATRICK BERNARD REESE,

Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Patrick Bernard Reese's ("Reese") Renewed Motion to Sever Defendants [207] ("Motion to Sever").

## I. BACKGROUND

On January 27, 2015, a grand jury in the Northern District of Georgia returned a five-count Indictment [1] charging Defendants Jason Philpot ("Philpot") and Reese (together, "Defendants") with aiding and abetting each other in Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); using, carrying and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2 and 3); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts 4 and 5). The Indictment alleges that, on September 30, 2014, Defendants robbed a Waffle House restaurant

in Tucker, Georgia. The firearm charges relate to the use and possession of firearms by Defendants during and after the robbery.

In March 2015, Reese moved to sever his trial from the trial of Defendant Philpot on the charges on which he was indicted. ([28]). On February 8, 2017, the Court denied Reese's motion. ([101]). On the morning of July 31, 2017, the first day of trial, Philpot pleaded guilty to Count 1. ([209]). Later that day, Reese renewed his motion to sever on the grounds that Philpot "would testify favorably for [Reese] if their trials were severed." ([207] at 2). The renewed motion largely is based on statements made by Philpot during his change of plea hearing.

## II. DISCUSSION

### A. Legal Standard

"[T]he general rule is that Defendants indicted together should be tried together." United States v. Chavez, 584 F.3d 1354, 1360 (11th Cir. 2009). Rule 14 of the Federal Rules of Criminal Procedure provides limited circumstances in which severance is permitted: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "The burden is on the defendant to demonstrate that a joint trial

will result in specific and compelling prejudice to the conduct of his defense." United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997).

> A defendant arguing for severance to permit a codefendant's exculpatory testimony must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the co-defendant would indeed have testified at a separate trial. If the defendant makes this showing, then, to determine if severance is warranted, the district court must: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion.

United States v. Green, 818 F.3d 1258, 1280 (11th Cir. 2016). "Most motions for severance on th[e] ground [that defendant wishes to use the testimony of a codefendant] fail the test." 1A Charles Alan Wright et al., Fed. Prac. & Proc. Crim. § 225 (4th ed. Apr. 2017 Update); see United States v. De La Paz-Rentas, 613 F.3d 18, 24 n.1 (1st Cir. 2010) ("Sanjurjo also argued below that joinder deprived him of the chance to have Molina testify for him, but such arguments are not usually successful.").

B. Analysis

Reese moves to sever on the grounds that Philpot's testimony "would potentially exonerate him." He argues that he "will be prejudiced in this trial if he is forced to be tried jointly with his co-defendant and therefore unable to compel

[Philpot's] testimony." ([207] at 3-4). Citing Philpot's sworn statements at his change of plea hearing, Reese claims Philpot would testify that "Mr. Reese did not participate in the robbery but rather that two other individuals entered inside the Waffle House with the intent to rob it." ([207] at 2).

Severance is not warranted here because Reese cannot meet his burden to show specific and compelling prejudice warranting severance. <u>Schlei</u>, 122 F.3d at 984. First, the Court finds Reese cannot demonstrate "the exculpatory nature and effect of the desired testimony." <u>Green</u>, 818 F.3d at 1280. The testimony on which Reese relies is inculpatory and would not have the effect Reese claims. Reese is charged with committing, or aiding and abetting, a Hobbs Act robbery. Philpot's admission that he aided and abetted the September 30, 2014, robbery supports that Reese also is criminally responsible, if not principally responsible, for the robbery that occurred. Philpot testified, at his change of plea hearing, that he, Reese, and two other individuals drove to the Waffle House restaurant to commit the robbery. (Transcript of Jason Philpot's Change of Plea Hearing (July 31, 2017) [209] ("Tr.") at 32-33). Philpot drove the "getaway car" and Reese was inside the vehicle. (Tr. at 33, 35). Philpot stated that two other individuals, in the car, entered the Waffle House "with the intent to rob" the restaurant. (Tr. at 32). Philpot testified that he knew "the Waffle House was going to be robbed," and that

4

"it was going to be robbed with the use of a weapon by [his] co-defendant, Mr. Reese." (Tr. at 31-32, 35). Philpot testified further that Reese "participate[d] in this robbery . . . to the extent that he was with [Philpot] and part of the gang that was going to rob the Waffle House." (Tr. at 35). Philpot testified that he knew the two individuals who entered the Waffle House were armed, that they intended to use their weapons to "scare people into giving money over," that they left the Waffle House with "guns in their hands," and that Philpot knew "they had used those weapons to scare people inside." (Tr. at 36-37).

Reese seeks to characterize Philpot's testimony as exculpatory because it alleges that Reese remained in the car during the course of the robbery. This allegation is not exculpatory, certainly not significantly so, because (1) Philpot also testified that the Waffle House "was going to be robbed with the use of a weapon by [his] co-defendant, Mr. Reese," (2) Philpot testified that Reese "participate[d] in this robbery . . . to the extent that he was with [Philpot] and part of the gang that was going to rob the Waffle House," and (3) Philpot's other statements support that Reese aided and abetted the robbery alleged in Count 1 of the Indictment. See United States v. Baker, 432 F.3d 1189, 1240 (11th Cir. 2005) (denying severance because "[e]ven if [the co-defendant's] proffered testimony were admitted, it is dubious that it would have been enough to overcome" the evidence supporting

5

defendant's guilt, and thus "the absence of [the co-defendant's] testimony was insufficiently prejudicial" to warrant severance). Philpot's testimony also is "of dubious credibility" because "it was in no way contrary to [his] own interests." United States v. Green, 818 F.3d 1258, 1280-81 (11th Cir. 2016). The other evidence the Government has represented will be introduced at trial is specifically adverse to Reese's claim that he did not commit the crimes charged against him, making it dubious that Philpot's testimony would overcome the other evidence of Reese's culpability.

Reese also has not met his burden to show that Philpot "likely" would testify in support of Reese if Defendants were severed. United States v. Cobb, 185 F.3d 1193, 1199 (11th Cir. 1999). "The court is not required to sever where the possibility of the co-defendants testifying is merely colorable and there is no showing that there is anything more than a gleam of possibility in the defendant's eye." United States v. Wilson, 500 F.2d 715, 721 (5th Cir. 1974). Philpot pleaded guilty to, but has not been sentenced for his conviction on, Count 1. "[A] criminal defendant absolutely maintains [their] right to assert the privilege against self-incrimination after entering into a plea agreement but prior to sentencing." United States v. Colon, 480 F. App'x 509, 512 (11th Cir. 2012); see Mitchell v. United States, 526 U.S. 314, 325 (1999) ("reject[ing] the position that

either petitioner's guilty plea or her statements at the plea colloquy functioned as a waiver of her right to remain silent at sentencing"); United States v. Butler, 659 F. App'x 390, 391 (9th Cir. 2016) ("[A] convicted but unsentenced defendant retains his Fifth Amendment rights."); United States v. Brooks, 681 F.3d 678, 711 (5th Cir. 2012) ("The Fifth Amendment right against self-incrimination only extinguishes once the sentence has been fixed and the judgment of conviction has become final"). If Defendants were severed, Philpot could assert his Fifth Amendment right against self-incrimination if he were called to testify in Reese's case. See United States v. Van Hemelryck, 945 F.2d 1493, 1501 (11th Cir. 1991) (finding severance was not warranted because, "[s]ince [the co-defendant] had not yet been tried, it is likely that she would have invoked her Fifth Amendment privilege if called to testify on behalf of [the defendant]"); United States v. Lyles, 593 F.2d 182, 192 (2d Cir. 1979) ("[I]f a co-defendant will invoke the Fifth Amendment at either a joint or a separate trial, the defendant seeking severance will gain nothing and judicial economy will have been sacrificed."); 1A Charles Alan Wright et al., Fed. Prac. & Proc. Crim. § 225 (4th ed. Apr. 2017 Update) ("[C]ourts show a healthy skepticism about . . . whether the codefendant would not ultimately refuse to testify based on [their] constitutional privilege even in a separate trial.").

Reese has not submitted any evidence showing that Philpot will not assert his Fifth Amendment rights or that he likely will testify if severance is ordered. This is fatal to his request for a severance. See United States v. Duzac, 622 F.2d 911, 912 (5th Cir. 1980) (denying severance motion where evidence was only that the co-defendant "might have elected to testify"); see also United States v. Pursley, 577 F.3d 1204, 1216 (10th Cir. 2009) (denying severance motions where co-defendants did not submit affidavits "expressing an intention to invoke their Fifth Amendment privilege in a joint trial, stating that they would testify in a severed trial, and identifying the exculpatory content of their testimony"); United States v. Davis, 397 F.3d 173, 183 (3d Cir. 2005) ("Although defense counsel for Minnis and Davis did not object to Scott's [severance] motion, neither one gave any indication that, if granted a severance, their clients would testify on Scott's behalf. . . . Accordingly, there is no evidence that either Minnis or Davis would have testified on Scott's behalf if the District Court had granted a severance."); United States v. Lopez, 6 F.3d 1281, 1285 (7th Cir. 1993) ("At most, Ramirez presented only a possibility that Chaidez would testify to exculpate him at a separate trial. That is not enough to require severance. . . . [T]he lack of any affidavit from Chaidez stands as a glaring omission in the record."). Reese has not satisfied the first part of the test set out in Green. 818 F.3d at 1280.

Even if Reese had met the first part of the Green test, the Court finds that severance is not warranted under the second part of the test. Reese's theory on Count 1 is that he was not involved in, and thus was not responsible for, the Waffle House robbery. Philpot's testimony implicates, and does not exonerate, Reese because it alleges that Reese "participate[d] in the robbery." (Tr. at 35). Defendants' theory on the firearm charges is that neither Defendant possessed a gun. Philpot's testimony also undercuts this theory because Philpot testified that Reese was armed and intended to rob the Waffle House. (Tr. at 31-32, 35). Near the conclusion of the hearing, Philpot testified that Reese "participate[d] in th[e] robbery . . . to the extent that he was with [Philpot] and part of the gang that was going to rob the Waffle House." (Tr. at 35). Philpot's testimony is not significantly exculpatory "in relation to [Reese's] theory of the case," and its absence at trial will not materially prejudice Reese's defense. Green, 818 F.3d at 1280.

Judicial economy also weighs against severance. See Schlei, 122 F.3d at 984 ("It is the district court's duty to balance the prejudice that a defendant may suffer from a joint trial, against the public's interest in judicial economy and efficiency."). The Indictment charges each Defendant with the same offenses, all of which arise out of a single incident on September 30, 2014, in which Defendants

9

allegedly worked together to rob a Waffle House. The witnesses and evidence generally apply to both Defendants, and a severed trial would result in a duplicative expenditure of judicial resources. See Baker, 432 F.3d at 1239-40 (denying severance, including because "considerations of judicial economy weigh against holding a separate trial for [the defendant]"). That Reese's motion was filed late in this case, after the trial had begun, further underscores that severance is not appropriate here. See id. at 1239-40 (denying severance, including because defendant's severance motion was filed after trial began, even though defendant "did not know [the grounds for the severance motion] in advance" of trial). Reese's Motion to Sever is denied.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Patrick Bernard Reese's Renewed Motion to Sever Defendants [207] is **DENIED**.

**SO ORDERED** this 1st day of August, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE